Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1472 | **DATE** | 3/26/2003 |
| **CASE TITLE** | Coyne vs. Siemens Information | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies defendant's motion for summary judgment (8-1). Defendant's motion to strike (19-1) is denied as moot. The case is set for a status hearing on 4/3/03 at 9:30 a.m. for the purpose of setting a trial date.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 27 2003 | |
| ✓ | Docketing to mail notices. | | | 22 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | 03 MAR 26 PM 4:39 | date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTHA COYNE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 02 C 1472 |
| SIEMENS INFORMATION AND COMMUNICATION NETWORKS, INC., | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Martha Coyne has sued her former employer, Siemens Information and Communication Network, Inc., under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a), 626(b). She alleges that Siemens discriminated against her on the basis of her age by subjecting her to harsher disciplinary procedures than a significantly younger, similarly situated co-worker. The case is before the Court on Siemens' motion for summary judgment.

### Factual Background

Siemens sells voice and data communications infrastructure to businesses. Def's 56.1 Stmt. ¶3. In September, 1996, Siemens hired Coyne as a sales manager. *Id.* ¶ 1. On January 15, 2002, Siemens terminated Coyne's employment. *Id.* ¶7. At that time she was 51 years old. *Id.* ¶6.

During her tenure at Siemens, Coyne supervised between six and eight sales representatives in the Chicago metropolitan area. *Id.* ¶¶17, 18. Her responsibilities as a sales manager included coaching and mentoring the sales representatives under her supervision, making accurate "forecasts" of new

business, and developing and increasing sales in her territory. *Id.* ¶ 19. As with other sales managers employed by Siemens, Coyne's performance was evaluated by a regional director who considered her ability to meet sales quotas, develop subordinate employees, engage customers, and make accurate predictions regarding future revenue. *Id.* ¶¶20, 26.

The evidence reflects that beginning in 2001, Coyne's superiors raised questions about her effectiveness as a manager in some of these performance categories. Until June 2001, Coyne reported to Alan Cassidy, the regional director for Siemens' Great Lakes region, which encompassed Coyne's Chicago-metro sales territory. *Id.* ¶46. In a written evaluation of Coyne's performance for the period of October 1, 1999 through May 30, 2001, Cassidy indicated that Coyne had fully achieved her objectives in terms of employee development and customer relations, but that she had only partially achieved her financial objectives. Def.'s Ex. 3. During the months of April, May and June of 2001, Michael Lewis, then the vice-president of Siemens' "western area," took over some of Cassidy's responsibilities. Lewis Dep. at 9:7-10. Disappointed with the results of an operational review he had conducted the year before, Lewis sought to foster better management discipline and to establish higher expectations for management in the Great Lakes region. *Id.* ¶¶11-13. But Lewis was not totally satisfied with the way management responded to his efforts. *Id.* At the end of June, 2001, Cassidy was terminated and Jeffery Paley was hired as the Great Lakes regional director. When he took over the position, Paley assumed responsibility for supervising both Coyne and her colleague, Caryn Schmidt, the sales manager for the state of Michigan. Pl's 56.1 Stmt. ¶¶127, 128.

The parties dispute some specifics regarding Paley's interaction with Coyne during the final six months of 2001. It is undisputed, however, that Coyne and Paley met on September 4, 2001, and

2

took notes of their conversation. Those notes and the parties' deposition testimony reflect that the two discussed Paley's concerns about Coyne's performance. Def's 56.1 Stmt. ¶¶56-72; Paley Dep., Ex. 1 (Paley's notes); Pl's 56.1 Stmt. ¶¶56-72; Pl's Ex. F at 32 (Coyne's notes). Paley told Coyne that he was uncomfortable with the direction of Coyne's department, that he wanted to make changes, and that he was considering replacing Coyne as sales manager. *Id.* Paley offered Coyne four options, including a severance package, a demotion, an alternative position with the company, and submission to a performance improvement plan. *Id.* Coyne settled on the performance improvement plan. *Id.* On October 12, 2001, Coyne and Paley agreed to specific terms of a plan requiring Coyne to meet certain sales targets and to generate positive feedback from her sales team within 90 days. Def's 56.1 Stmt. ¶¶79-82; Pl's 56.1 Stmt. ¶¶79-82. By early January, however, Paley determined that Coyne had not met her objectives. Paley Dep. at 47:12-24; 48:1-6. On January 15, 2002, Siemens terminated Coyne's employment. Pl's 56.1 Stmt. ¶98.

Siemens insists that Coyne's termination was based entirely on her poor performance, and in the end, on her inability to meet the goals set forth in her performance improvement plan. Def's 56.1 Stmt. ¶¶98-99. But Coyne maintains that her age was a factor motivating Siemens' decision both to place her on the performance improvement plan and to terminate her employment. As evidence she offers a comparison between her treatment by the company and its treatment of her co-worker, Caryn Schmidt, another sales manager in Siemens' Great Lakes region. Schmidt was 39 years old at the time of Coyne's firing and served as a sales manager in the Michigan area. Pl's 56.1 Stmt. ¶¶129-130. Coyne argues (and Siemens admits) that Schmidt, like Coyne, was not accomplishing some of her goals on regular basis. Def's Answer to Pl's 56.1 Stmt. ¶ 155. Coyne points to a "stack ranking report" for

3

fiscal year 2001-2002 that shows that Schmidt attained only 42.2% of her sales goals. *See* Paley Dep. at 125. Further, Coyne notes that in December 2001, Schmidt was given verbal warnings in connection with her performance as a sales manager. Def.'s Answer to Pl's 56.1 Stmt. ¶162. Yet Schmidt was not placed on a performance improvement plan, and her employment has not been terminated. Def's Answer to Pl's 56.1 Stmt. ¶162. Siemens attempts to distinguish the circumstances of Schmidt's employment from that of Coyne's on several grounds, pointing to differences between Coyne and Schmidt's sales areas and emphasizing Schmidt's relative lack of experience as a sales manager. It also contends that Coyne's termination along with a hiring freeze instituted by the company in March of 2002 has left the Great Lakes sales region shorthanded, and has made it impossible for Siemens to move towards Schmidt's termination or to place her on a performance improvement plan.

Siemens has moved for summary judgment, arguing that Coyne's ADEA case rests on her treatment relative to Schmidt's, a comparison that it argues is too weak to support an inference that Coyne was treated less favorably because of her age.

## Analysis

In order for Coyne to succeed on a claim under the ADEA, she must show that the adverse employment action taken against her would not have occurred "but for" Siemens' motive to discriminate against her on the basis of her age. *Miller v. Borden*, 168 F.3d 308, 312 (7th Cir. 1999). Lacking direct evidence of discrimination, Coyne attempts to establish Siemens' motive to discriminate through the McDonnell Douglas burden shifting method. *See McDonald Douglas Corp. v. Green*, 411 U.S. 792 (1973). She must first set forth a prima facie case, showing that she (1) was a member of the protected class (age 40 or over); (2) was doing her job well enough to meet Siemens' legitimate

4

expectations; (3) was subject to an adverse employment action; and (4) was treated less favorably than a similarly situated, substantially younger employee.[1] *See Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002); *Miller*, 168 F.3d at 313. If she can successfully make this case, the burden shifts to Siemens to come forward with evidence of a legitimate non-discriminatory reason for its actions. *Id.* Once Siemens identifies a legitimate non-discriminatory reason, the burden shifts back to Coyne to attempt to show that Siemens' explanation for its actions is a pretext for discrimination. *Id.*

In support of its motion for summary judgment, Siemens argues that Coyne has neither established a prima facie case of age discrimination, nor shown that Siemens' legitimate non-discriminatory reason for her termination–her allegedly poor performance–is a pretext for age discrimination. We disagree. Coyne has established a prima facie case of age discrimination sufficient to survive summary judgment. Further, the question of whether Coyne was disciplined and terminated based on poor performance, or rather was mistreated based on her age, turns on credibility determinations reserved for determination by a jury.

---

[1] Siemens urges the court to adopt one of two alternative formulations of this fourth element of the prima facie case. It would have us require that Coyne show that she was *replaced by*–not *treated less favorably than*–a substantially younger employee. Alternatively, Siemens would require Coyne to compare her treatment at Siemens with that of the employees who absorbed her responsibilities after she was terminated. But these proposed standards, which the Seventh Circuit has applied in certain "single discharge" and "reduction-in-force" cases, *see e.g., Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331 (7th Cir. 1995); *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871 (7th Cir. 2002), are not appropriate here. We agree with Coyne that the facts of her case fall somewhere between the "reduction in force" and "single discharge" scenarios: she was terminated allegedly for poor performance, not as part of a reduction in force, and though Siemens has not replaced her it has stated its intention to do so. Def's. Reply at 3. Moreover, the Seventh Circuit has recognized that "the exact content of the fourth prong" of a prima facie case of age discrimination "may vary from case to case to take differing circumstances into account." *Collier v. Budd*, 66 F.3d 886, 890 (7th Cir. 1995). In the instant case, a comparison between Coyne and a less favorably treated, similarly situated, substantially younger employee is strong enough to raise an initial inference of age discrimination.

Summary judgment is proper only if the evidentiary materials submitted by the parties reveal no genuine issue of material fact. Fed. R. Civ. P. 56(c). An issue is considered "genuine" if a reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). Because a reasonable juror could conclude that Coyne's age is the reason that she was placed on a performance improvement plan and fired, while her younger underperforming co-worker was not, Siemens motion for summary judgment is denied.

## A.    *The Prima Facie Case*

Siemens concedes that Coyne has established two of the four elements of her prima facie case: she is over 40, and she suffered adverse employment action. But it insists that the evidence shows that Coyne was not performing her job in line with the company's legitimate expectations. Siemens also considers it undisputed that Coyne and Schmidt are not similarly situated employees and argues that a comparison between the two is insufficient to raise an inference of age discrimination. Further, it contends that even if Schmidt and Coyne are similarly situated, evidence of a single younger, less favorably treated comparator is not enough to state a prima facie case.

### 1.    Legitimate expectations

It is undisputed that Coyne received some negative evaluations of her work leading up to her placement on the performance improvement plan, and her eventual termination. The parties agree that Michael Lewis, Vice President for Coyne's region conducted an operational review in which he concluded that the region lacked "manager discipline," and suffered from a "talent deficiency." Lewis Dep. at 11-12. The parties also agree that Coyne failed to meet her sales quota for 8 quarters from July 1998 through July 2001. Def's 56.1 Stmt. ¶90; Pl's 56.1 Stmt., ¶90. And it is clear that prior to

her termination, Jeffrey Paley, Coyne's immediate supervisor, informed Coyne that her sales forecasts were inconsistent, her "pipeline" (prospective business outlook) was low, and that there was "no light at the end of the tunnel." Pl's 56.1 Stmt. ¶90. It is equally undisputed, however, that Coyne's colleague Caryn Schmidt attained less than 50% of her sales goals for the entire fiscal year leading up to Coyne's termination, that Schmidt was subject to verbal warnings for poor performance, and that Schmidt was neither placed on a performance improvement plan, nor terminated. Def's Answer to Pl's 56.1 Stmt. ¶160. Thus, we agree with Coyne that there is a genuine issue as to whether her job performance was actually unacceptable to Siemens. When the plaintiff produces evidence that the employer applied its legitimate expectations in a disparate manner, the second and fourth elements of the prima facie case merge, allowing the plaintiff to establish a prima facie case with evidence that similarly situated employees were treated more favorably. *See Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002). The evidence tends to show that Siemens viewed Coyne's work as problematic. But Schmidt's performance, subject to similar criticism, did not result in termination.

    2.    Similarly Situated

Siemens next argues that Coyne and Schmidt are not similarly situated and thus cannot be compared for purposes of Coyne's age discrimination claim. In employment discrimination cases where a plaintiff claims that she was disciplined more harshly than a colleague for some prohibited reason, she must show "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000). Coyne and Schmidt held the same

7

position (sales manager) in the same region (Great Lakes), shared identical job requirements, and were both supervised by Jeffrey Paley. Furthermore, Paley expressed similar criticism of the two employees' job performances. *See* Def's Answer to Pl's 56.1 Stmt. ¶¶161-162; Pl's Ex. F, *Draft Performance Improvement Plan for Schmidt, Notes Reflecting Schmidt's Performance.* This is enough to show, at least for purposes of fending off Siemens' summary judgment motion, that Coyne and Schmidt were similarly situated employees. We note Siemens' objections that Coyne has more management experience than Schmidt, that Schmidt was relatively new to her job, and that Schmidt's Michigan sales territory was notoriously difficult to manage. But Coyne has made a credible case that the applicable standards were objective and were not treated by Siemens as admitting of these types of variances.

The Court also rejects Siemens' argument that evidence of one younger, similarly situated, but more favorably treated employee is insufficient to establish the fourth element of a prima facie case or, to jump ahead a bit, a genuine factual issue as to whether the employer's stated reason for its actions was a pretext for discrimination. A superficial reading of the two Seventh Circuit cases on which Siemens relies, *Kuhn v. Ball State University*, 78 F.3d 330, 332 (7th Cir. 1996), and *Shank v. Kelly-Springfield Tire Co.*, 128 F.3d 474, 480 (7th Cir. 1997), suggests that such a rule exists. But this disappears on close examination of those decisions.

The plaintiff in *Kuhn* was an assistant professor of music at a university who sued because he was passed over for promotion to associate professor after the university said that his work was not superior, he had not achieved distinction in performance, and he had given only limited service to the university community. *Kuhn*, 78 F.3d at 331. Against this Kuhn could offer only that a younger person had been promoted to associate professor. *Id.* at 332. The court said this was insufficient to create an

8

inference of discrimination, stating that "[s]cattered decisions either way reveal little about the University's processes. ... A plaintiff who wants a court to infer discrimination from the employer's treatment of comparable cases has to analyze a goodly sample. One is an anecdote, and several cases are several anecdotes. Judges do not find discrimination on such a thin basis." *Id.*

The context in which Kuhn had offered the evidence concerning the younger professor, however, was nothing like what is at issue in Coyne's case. Kuhn was attempting, however maladroitly, to offer a sort of statistical proof – in other words, to obtain an inference of discrimination simply from the fact that a younger person had once been promoted. As statistical evidence, Kuhn's comparison was obviously deficient; the sample was not big enough to create a reasonable inference along the lines that he sought. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1177 (7th Cir. 2002) (reading *Kuhn* as a case about statistical evidence, and emphasizing the need to present a comprehensive analysis of an employer's decisions to build a statistical case). Kuhn had made no effort (at least none is apparent in the Seventh Circuit's decision) to show that the younger professor was actually comparable, in other words, that he was no better qualified for promotion than Kuhn. Thus the court was not called upon to analyze the question we address here: whether differential treatment of two similarly situated employees can satisfy a plaintiff's burden of establishing a prima facie case or can create evidence of pretext sufficient to require a trial. In short, the court's decision involved the sufficiency of a database to create a statistical inference, not the sufficiency of comparisons to create a genuine issue of pretext. *See Kuhn*, 78 F.3d at 332, 333 (referring repeatedly to questions regarding "statistical analysis" and "statistical tools").

*Shank*, on the other hand, is somewhat closer to this case. The plaintiff in that case, a district

9

manager, claimed he was terminated because of his age. The defendant said it had fired him because he had made a fraudulent claim for a refund in violation of company policy. To rebut this, the plaintiff offered, among other things, evidence that Harper, a younger district manager had been treated more favorably. The court said that "no reasonable inference of pretext could have been drawn from the evidence concerning [a supervisor's] treatment of Harper. Harper did not engage in fraudulent conduct and was not terminated. His situation was not comparable to Mr. Shank's, and in any event, one example of better treatment is not enough to support an inference of discrimination." *Shank*, 128 F.3d at 479-80 (citing *Kuhn*).

Although *Shank* addressed the issue of a single comparator in terms of whether it was sufficient to show pretext – the issue we likewise address here – it does not compel a grant of summary judgment in favor of Siemens. First of all, unlike in this case, the other employee in *Shank* was not similarly situated to the plaintiff; that was the primary basis for the court's ruling. Second, the court was addressing a jury verdict, not a summary judgment ruling; the *McDonnell Douglas* burden-shifting approach does not apply at jury trials. *See, e.g., Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 925 (7th Cir. 2000). Thus the court essentially ruled that the plaintiff's evidence regarding a single comparator, by itself, was not enough to support the jury's verdict in the plaintiff's favor. That is not the same as a ruling that no genuine issue of material fact existed (the question we address here).

Finally, if *Kuhn's* disapproval of statistical inferences based on too small a sample were imported wholesale into *McDonnell Douglas* arena, it would virtually eliminate the ability of a plaintiff to establish pretext based on comparisons. For *Kuhn* does not simply say that a single example is not enough to give rise to a reasonable statistical inference; it refers to "the need to get beyond a few

10

comparison cases" and suggests that only a statistical analysis of "all the employer's decisions" will work. *Kuhn*, 78 F.3d at 332; *see also Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1141 (7th Cir. 1997) (evidence of two other cases insufficient to give rise to an inference of discrimination; citing *Kuhn*). Statistical analysis being what it is, a modest number of examples likely is never enough to constitute a sufficient data base. *See, e.g., Soria v. Ozinga Bros., Inc.*, 704 F.2d 990, 995 (7th Cir. 1983) (rejecting, in an employment discrimination case, a statistical conclusion based on data involving fifteen incidents); *United States v. Rothberg*, 222 F. Supp. 2d 1009, 1013 (N.D. Ill. 2002) (rejecting a statistical inference based on eleven similar situations). Thus if *Kuhn's* rejection of small samples for statistical purposes translates into a rejection of similarly modest numbers of comparisons for purposes of analyzing a plaintiff's prima facie showing or her evidence of pretext, the proposition that a plaintiff is entitled to a trial if she obtains evidence of better-treated comparable employees outside the protected class (and satisfies the elements of a prima facie case) will essentially be a dead letter, except perhaps in cases involving mega-employers. This would undermine an essential purpose of the *McDonnell Douglas* analysis – allowing inferential proof of discrimination in recognition of the fact that employers who discriminate rarely do so openly. *See Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1163 (7th Cir. 1994) (a central purpose of the *McDonnell Douglas* approach is "to relieve [a] plaintiff of the burden of having to uncover what is difficult to uncover – evidence of discriminatory intent," quoting *Oxman v. WLS-TV*, 846 F.2d 448, 454-55 (7th Cir. 1988)).

For these reasons, the Court declines to impose upon Coyne the burden of showing enough comparable cases to create a statistically significant data base – or for that matter any more than a single truly comparable case. Siemens will be free to argue at trial that the single comparison proves

11

nothing, but it is not entitled to summary judgment on that basis.

*B.    Pretext*

Siemens next argues that even if Coyne has shown a prima facie case of age discrimination, her claim cannot survive summary judgment because she cannot show that Siemens' proffered reasons for her termination–poor performance–are a pretext for discrimination. As we have discussed, however, Coyne has come forward with evidence that her substantially younger, underperforming colleague was insulated from disciplinary procedures that, applied to Coyne, resulted in her termination. It is undisputed that under Siemens' corrective action policy, employees are placed on performance improvement plans if they fail to improve their performance deficiencies after receiving a verbal warning regarding those deficiencies. Def's Answer to Pl's 56.1 Stmt. ¶241. Though Coyne was placed on such a plan and was then terminated, Schmidt was not, despite verbal warnings and continued poor performance. *Id.* ¶257. Though Siemens provides several plausible explanations why Schmidt was not disciplined according to company policy, the question of whether age motivated its decision turns on credibility issues that must be determined by a jury.

*C.    Siemens' Motion to Strike*

The court acknowledges Siemens' motion to strike portions of Coyne's Local Rule 56.1 Statement of Material Facts. Because none of the evidentiary material that Siemens challenges is necessary to our resolution of its motion for summary judgment, its motion to strike is denied as moot.

12

## CONCLUSION

For the reasons stated above, the Court denies defendant's motion for summary judgment [docket item 8-1]. Defendant's motion to strike [docket item 19-1] is denied as moot. The case is set for a status hearing on April 3, 2003 at 9:30 a.m. for the purpose of setting a trial date.

MATTHEW F. KENNELLY
United States District Judge

Date: March 26, 2003